**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| NAVDEEP SHARMA, | |
| *Plaintiff*, | |
| v. | Civil Action No. 25-3368 (TJK) |
| MARCO A. RUBIO et al., | |
| *Defendants*. | |

## MEMORANDUM OPINION

Navdeep Sharma sues several U.S. Government officials under the Administrative Procedure Act and for mandamus relief, seeking to compel the adjudication of his H1-B visa application. After traveling to India for a visa interview in January 2025, Sharma had his visa denied twice within seven months and was then asked to provide more information. About a year after that, he is still in India, unable to return to his job and family in the United States. Defendants move to dismiss. While the Court is sympathetic to Sharma's situation, for several reasons, it cannot award him the relief he seeks. Sharma cannot bring claims against certain Defendants, the Court lacks jurisdiction over some of his claims, and the rest fail to state a claim. Thus, the Court will grant Defendants' motion and dismiss the case.

## I.    Background

### A.    Legal Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, governs the process by which a noncitizen can be admitted to the United States. INA § 1101(a)(15)(H)(i)(B) allows noncitizens in "specialty occupation[s as] described in section 1184(i)(1)" to apply for an employment-based visa, commonly called an H-1B visa. Such visas are valid "for a period up to three years," 8 C.F.R. § 214.2(h)(9)(iii)(A)(1), but may be extended for additional lengths of time,

usually not exceeding three years, *see id.* §§ 214.2(h)(15)(i), (ii)(B).

The H-1B visa application process has three steps.  First, the American employer seeking to hire the applicant files an I-129 Petition with United States Citizenship and Immigration Services , or USCIS, on behalf of the applicant.  *See* 8 C.F.R. § 214.1(c)(5); 8 U.S.C. § 1184(c)(1).  Then the applicant submits a Form DS-160, the Electronic Nonimmigrant Visa Application.  22 C.F.R. §§ 41.103(a)(1), (b)(1).  The applicant then must appear for an interview before a consular officer at the U.S. Consulate where he resides.  *See* 8 U.S.C. § 1202(h); 22 C.F.R. § 41.101(a)(1).  At the interview, the applicant bears the burden of proving eligibility for the visa.  8 U.S.C. § 1361; *see also* 22 C.F.R. § 41.121(a).  The consular officer must then determine whether to grant or deny the visa—he "cannot temporarily refuse, suspend, or hold the visa for future action" after the interview.  Vol. 9, Foreign Affairs Manual § 504.1-3(g); *see also id.* § 504.9-2; 22 C.F.R. § 41.106 (visa decision must be made "properly and promptly . . . in accordance with the applicable regulations and instructions").  If a visa is refused, the refusal "must be based on legal grounds."  22 C.F.R. § 41.121(a).  INA § 221(g), colloquially known as a "§ 221(g) refusal," allows a visa application to be denied, among other reasons, if "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa" under any other provision of the INA.

**B.      Factual and Procedural Background**

Sharma, a citizen of India, alleges that he has worked for U.S.-based employer Tata Consultancy Services ("TCS") since 2021.  ECF No. 1 ("Compl.") ¶¶ 4, 18.  From 2021–2025 he resided in Georgetown, Texas, with his wife and two children, who are U.S. citizens.  *See id.* ¶¶ 18, 118.  In December 2023, TCS filed an H1-B petition on Sharma's behalf, seeking to extend his H1-B status through March 2027.  *Id.* ¶¶ 42–43.  USCIS approved TCS's H1-B petition in early 2024 and, in November 2024, Sharma submitted his DS-160 application.  *Id.* ¶¶ 43–44.

2

In January 2025, Sharma traveled to Hyderabad, India, for a visa interview.  Compl. ¶ 46. After the interview, Sharma received a § 221(g) refusal.  *Id.* ¶ 47.  He also received a request to "schedule a panel physician appointment for a medical examination." *Id*.  Sharma completed the medical exam and a few months later—still in India—Sharma received a request from the Consulate that he "schedule yet another panel physician appointment." *Id.* ¶¶ 47–49.  He did so.  *Id.* ¶ 51. In July 2025, the "online case status for Sharma's DS-160 Application was changed to 'Approved'" so Sharma returned to the U.S. Consulate to collect his passport.  *Id.* ¶¶ 53–54.  But when he arrived, he instead received another § 221(g) refusal.  *Id.* ¶ 54.  One week later, Sharma received an email from the Consulate "requesting a list of all of his social media accounts," which Sharma provided.  *Id.* ¶¶ 55–56.  Sharma has been waiting for a final decision ever since.  *Id.* ¶ 57.  While waiting in India, Sharma cannot travel to the United States, is "at risk of losing his employment," and is separated from his wife and children.  *Id.* ¶¶ 58, 118.

Sharma brought this suit in September 2025, about nine months after receiving his first § 221(g) visa refusal and two months after the second.  *See generally* Compl.  He sued various State Department officials, including the Secretary of State, the Senior Bureau Official for Consular Affairs, the Charge d'Affaires at the U.S. Embassy to India, the Consul General in Hyderabad, and an unnamed consular officer (collectively, the "State Department Defendants").  *Id*. ¶¶ 19–23. Sharma alleges that the Secretary of State and the Senior Bureau Official for Consular Affairs are "charged with overseeing . . . U.S. Embassies and their consular operations," and "formulating and implementing policies related to immigration and consular services."  *Id.* ¶¶ 19–20.  The Charge d'Affaires at the U.S. Embassy in India, according to Sharma, "is charged with overseeing all aspects of the U.S. Embassy to India, the U.S. Consulates in India, and their operations in India including consular matters," and the Consul General and the unnamed consular officer in Hyderabad are responsible for "the granting and refus[ing] of visas."  *Id.* ¶¶ 21–23.

3

Sharma also named the Secretary of the Department of Homeland Security ("DHS"), the U.S. Attorney General, and the Director of the Federal Bureau of Investigation ("FBI").  Compl. ¶¶ 24–26.  Sharma alleges that the first two officials are "charged with . . . implementing the INA," and that the FBI Director is responsible for "ensuring timely completion of all requests made for security administrative processing clearances and security checks."  *Id.* ¶¶ 24–26.

Sharma brings four counts: two each under the Administrative Procedure Act, 5 U.S.C. § 555(b) ("APA"), and the Mandamus Act, 28 U.S.C. § 1361.  Count I is an APA "undue delay" claim against the State Department Defendants and the DHS Secretary, alleging that they failed to adjudicate his visa in a timely manner and requesting an order compelling them to do so.  Compl. ¶¶ 72–83.  Count II seeks a writ of mandamus against those same parties, seeking the same relief. *Id.* ¶¶ 84–95.  Count III is an APA "undue delay" claim against the Attorney General and FBI Director, alleging that they failed to timely submit background checks required for Sharma's visa and requesting the Court compel them to do so.  *See id.* ¶¶ 96–106.  And Count IV seeks a writ of mandamus against those same two officials, on the same grounds.  *See id.* ¶¶ 107–116.

Defendants now move to dismiss all of Sharma's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 18.  They argue that Sharma lacks standing to sue any Defendant other than the State Department Defendants and that Sharma fails to state a claim on which relief may be granted.  *Id.*

## II.    Legal Standards

"Federal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), confined by the Constitution to those cases and controversies listed in Article III.  *Royal Canin U.S.A. Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025).  To this end, the Court has "an independent obligation to determine whether subject-matter jurisdiction exists" over

4

each claim, even if neither party has raised the issue. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

The plaintiff has the burden to establish the Court's subject-matter jurisdiction. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). This includes the burden to establish standing. *Little v. Fenty*, 689 F. Supp. 2d 163, 166–67 (D.D.C. 2010). That burden "grows heavier at each stage of the litigation." *Osborn v. Visa Inc.*, 797 F.3d 1057, 1063 (D.C. Cir. 2015). To survive a motion to dismiss, the plaintiff need only allege a qualifying "injury resulting from [Defendants'] conduct." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). In evaluating a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and . . . grant[] the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation omitted). That said, "[a] court may also consider material beyond the allegations in the complaint when determining whether it has jurisdiction to hear the case, so long as it accepts the factual allegations in the complaint as true." *Holland v. ACL Transp. Servs., LLC*, 815 F. Supp. 2d 46, 52 (D.D.C. 2011).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff states a facially plausible claim when he pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true "all well-pleaded factual allegations" and "construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014). But "mere conclusory statements" are not enough to establish a plausible claim, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### III.    Analysis

As noted above, Defendants argue that Sharma lacks standing to sue any party other than the State Department Defendants and that Sharma fails to state a claim on which relief may be granted.  The Court largely agrees, though it will dismiss some of Sharma's claims on different grounds than Defendants sought.  For the reasons explained below, the Court will dismiss Counts III and IV and parts of Counts I and II for lack of standing, dismiss the remainder of Count II for lack of subject-matter jurisdiction, and dismiss the remainder of Count I for failure to state a claim.

### A.    The Court Will Dismiss All Claims Against Non-Consular Officers for Lack of Standing

To establish standing at the motion-to-dismiss stage, a plaintiff must "clearly . . . allege facts demonstrating" that he has satisfied each element of the standing inquiry.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (alteration in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  Those three "irreducible" elements are well-known. *Lujan*, 504 U.S. at 560.  First, a plaintiff must have "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Id.* (cleaned up).  Second, that injury must be "fairly traceable to the challenged action of the defendant."  *Id.* (cleaned up).  "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.* at 561 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38, 43 (1976)).

To begin, Sharma lacks standing to bring his claims in Counts I and II against the DHS Secretary.  He alleges, and the Court accepts as true, see *Am. Nat'l Ins. Co.*, 642 F.3d at 1139, that USCIS—a component of DHS—approved Sharma's H1-B employer petition in January 2024, Compl. ¶ 43.  Thus, when this case was filed, DHS had already completed its role in adjudicating the visa petition.  Courts in this District are divided as to whether this scenario presents standing

6

or mootness defects. *Compare Brzezinski v. DHS*, No. 21-cv-376 (RC), 2021 WL 4191958, at *3 (D.D.C. Sept. 15, 2021) (dismissing claims against DHS and USCIS officials on mootness grounds), *and Mahmood v. DHS*, No. 21-cv-1262 (RC), 2021 WL 5998385, at *4 (D.D.C. Dec. 20, 2021) (same), *with Whitlock v. DHS*, No. 21-cv-807 (DLF), 2022 WL 424983, at *3–4 (D.D.C. Feb. 11, 2022) (dismissing similar claims on standing grounds). But either way, the Court lacks subject-matter jurisdiction over these claims because even "according to [Sharma,] the case is out of the hands of USCIS and DHS." *Brzezinski*, 2021 WL 4191958, at *3. So the Court will dismiss the claims against the DHS Secretary in Counts I and II.

Sharma also lacks standing for his claims against the Attorney General, FBI Director, Secretary of State, and State Department Senior Bureau Official for Consular Affairs. Sharma fails to plausibly allege that these officials caused the delay at issue or otherwise had (or have) any role in the visa adjudication process. Sharma alleges only that the Attorney General is "charged with certain functions involved in the implementation of the INA" and that the Attorney General, along with the FBI Director, is "responsible for overseeing the timely completion of all requests made for security administrative processing clearances and security checks." Compl. ¶¶ 25–26. But Sharma does not allege any facts suggesting that the disputed delay in his visa application is attributable to a failure to process a security check—he alleges only that completion of "administrative processing clearances and security checks . . . *may be contributing* to the unreasonably delayed adjudication of the DS-160 Application." *Id.* ¶ 12 (emphasis added). With no other facts that push the claim from the possible to the plausible, the "sheer possibility" that the FBI Director or Attorney General played some role in the purported delay is insufficient to allege standing. *See Iqbal*, 556 U.S. at 678. So the Court will also dismiss Counts III and IV, which bring claims against the Attorney General and FBI Director only, in their entirety.

Last, Sharma lacks standing to sue the Secretary of State and the State Department Senior Bureau Official for Consular Affairs.  True, Defendants challenge Sharma's standing over claims against the *non-State Department* Defendants only.  *See* ECF No. 18 at 11.  But it is the Court's duty to assure itself of its own jurisdiction, and, in similar circumstances, courts in this District have routinely held that plaintiffs challenging visa delays lack standing against senior State Department Officials who are not consular officers.  *E.g.*, *Zakeri v. Rubio*, No. 25-cv-3222 (TJK), 2026 WL 1493749, at *3 (D.D.C. May 28, 2026) (dismissing claims against the Secretary of State); *Nusrat v. Blinken*, No. 21-cv-2801 (TJK), 2022 WL 4103860, at *4 (D.D.C. Sept. 8, 2022) (dismissing claims against the Secretary of State and the Acting Legal Adviser).  The INA grants the power to issue nonimmigrant visas solely to consular officers.  *See* 8 U.S.C. §§ 1104(a), 1201(a)(1)(B); *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (The INA "grants consular officers exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations" (internal citation omitted)).  And Sharma alleges that the Secretary of State and Senior Bureau Official for Consular Affairs are responsible for the delay only because they have oversight of the Department; he alleges no facts tying them to his visa application specifically.  *See* Compl. ¶¶ 19–20.  He has therefore failed to plead the "irreducible" minimum of standing, that any injury he suffered is traceable to these two Defendants.  *Lujan*, 504 U.S. at 560.  So the Court will also dismiss the claims against the Secretary of State and the State Department Senior Bureau Official for Consular Affairs in Counts I and II.

What is left of Sharma's claims are Counts I and II, insofar as they are directed against three Defendants: the Charge d'Affaires of the U.S. Embassy in India, the Consul General in Hyderabad, and the unnamed consular officer.  Sharma has satisfied standing against these three officials, whom the Court considers to be consular officers.  *See Zakeri*, 2026 WL 1493749, at *3 (reasons for finding a lack of standing against State Department Officials "does not extend to

[consular officers]"); *Liew v. Sanders*, 737 F. Supp. 3d 30, 36 (D.D.C. 2024) (consul general and deputy chief of mission are consular officers under the INA).

### B.    The Court Will Dismiss Sharma's Remaining Unreasonable-Delay Claims

As described above, what is left of Sharma's claims are Counts I and II, to the extent they are directed against the Charge d'Affaires of the U.S. Embassy in India, the Consul General in Hyderabad, and the unnamed consular officer. And to review, Count I alleges unreasonable delay under the APA and Count II requests relief under the Mandamus Act. For the reasons discussed below, the Court will dismiss these claims. Count II fails for lack of subject-matter jurisdiction and Count I for failure to state a claim, each because Sharma has failed to plausibly allege unreasonable delay.[1]

"Few legal standards are more exacting than the requirements for invoking mandamus jurisdiction under § 1361." *Illinois v. Ferriero*, 60 F.4th 704, 714 (D.C. Cir. 2023). "Mandamus is a 'drastic' remedy, only available in 'extraordinary situations, and thus 'is hardly ever granted.'" *Id.* (quoting *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005)). As a threshold matter, a plaintiff seeking mandamus relief "must demonstrate 1) a clear and indisputable right to the particular relief sought against the federal official, 2) that the federal official is violating a clear duty to act, and 3) that the plaintiff has no adequate alternate remedy." *Id.* at 713. Moreover, to issue mandamus relief, the performance to be compelled must rest on "a clear non-discretionary duty." *Pittson Coal Group v. Sebben*, 488 U.S. 105, 121 (1988). If a plaintiff cannot establish all three requirements, the court "must dismiss for lack of subject matter jurisdiction." *Ferriero*, 60 F.4th at 714.

---

[1] Defendants challenge Plaintiff's mandamus claim in Count II only for failure to state a claim under Rule 12(b)(6). *See* ECF No. 18 at 15, 18. But, in the D.C. Circuit, failure to show entitlement to mandamus relief is a jurisdictional defect and so the Court lacks subject-matter jurisdiction over Count II. *See Illinois v. Ferriero*, 60 F.4th 704, 714 (D.C. Cir. 2023).

Because right to relief is a jurisdictional element, "mandamus jurisdiction under § 1361 merges with the merits." *Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020) (quoting *In re Cheney*, 406 F.3d at 729). So "the Court's obligation to address its jurisdiction before considering the merits does not prevent it from deciding this case on the reasonableness of Defendant[s'] alleged delay."[2] *Diakanua v. Rubio*, No. 24-cv-1027 (TJK), 2025 WL 958271, at *4, (D.D.C. Mar. 31, 2025). Thus, because "[t]he same standard applies to claims of unreasonable delay under the APA and the Mandamus Act," *Khan v. Blinken*, No. 23-cv-3474 (TJK), 2024 WL 2880426, at *2 (D.D.C. June 7, 2024), Sharma's "clear right to [mandamus] relief" in Count II merges with his unreasonable-delay APA claim in Count I, *Ferriero*, 60 F.4th at 713.

In the D.C. Circuit, "[t]here is 'no per se rule as to how long is too long' to wait for agency action." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (*quoting In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)). Instead, courts rely on the six "TRAC factors":

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

---

[2] Defendants cite to *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *1 (D.C. Cir. July 24, 2024) for the proposition that "the government has no clear, non-discretionary duty to further process or adjudicate a visa application once it has been refused by a consular officer under INA Section 221(g), 8 U.S.C. § 1201(g)." ECF No. 18 at 16. Because the Court may dismiss this case on other grounds, it need not weigh in on the *Karimova* decision at this time.

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (cleaned up). The *TRAC* factors, however, are "hardly ironclad . . . [but] nevertheless provide[] useful guidance in assessing claims of agency delay." *Id.* "Each case must be analyzed according to its own unique circumstances," as each "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n, Int'l v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984). Courts often address the *TRAC* factors under "four basic inquiries." *Rahman v. Blinken*, No. 22-cv-2732 (JEB), 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023).

> First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)? Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)? Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Id.* (cleaned up).

### 1.    *TRAC* Factors 1 and 2

The first two TRAC factors favor Defendants. These factors require the Court to determine "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). The first factor is often considered the "most important." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). Under the INA, there is "no congressionally imposed timeline" for adjudicating visa applications. *See Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020). "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017). Without a "set timeline, the Court looks to case law for guidance." *Dastagir v. Blinken*, 557 F.

Supp. 3d 160, 165 (D.D.C. 2021).  The D.C. Circuit has found a four-and-a-half-year delay not unreasonable.  *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 342 (D.C. Cir. 2024). And district courts "have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (collecting cases).  Moreover, "delays of around two years are usually considered reasonable."  *Noori v. Blinken*, No. 23-cv-1463 (TJK), 2024 WL 939990, at *3 (D.D.C. Mar. 5, 2024); *see also Ghadami v. DHS*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) ("[M]any courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law.").

Because "[c]ourts measure the period of delay from the last government action to the issuance of the opinion," *Nusrat*, 2022 WL 4103860, at *6 n.6, and the Hyderabad Consulate last requested information from Sharma in July 2025 (which he provided), the delay here comes to about a year, *see* Compl. ¶ 55.  As reflected above, that delay falls well short of pleading what courts have considered an unreasonable delay.[3]  And that is so even in the context of alleged delays in the nonimmigrant visa context.[4]  *See Shen v. Pompeo*, No. 20-cv-1263 (ABJ), 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021) (holding that a 21-month delay in adjudicating a

---

[3] Even setting aside the Hyderabad Consulate's July 2025 request, measuring the delay from Sharma's visa interview would amount to about 19 months, which still falls well short of pleading an unreasonable delay.  *See* Compl. ¶ 46.

[4] Still, the Court may consider caselaw addressing delays in adjudicating nonimmigrant visa applications, like the one here, as well as immigrant visa applications.  *See Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 162 (D.D.C. 2022) (declining to distinguish between treatment of immigrant and nonimmigrant visa applications).

nonimmigrant visa was not unreasonable).  For these reasons, the Court has no trouble finding that factors one and two favor Defendants.

### 2.      *TRAC* Factors 3 and 5

Factors three and five favor Sharma.  These factors involve "the interests prejudiced by delay," including possible effects on "human health and welfare."  *TRAC*, 750 F.2d at 80; *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (considering the third and fifth factors in tandem).  Here, Sharma alleges economic as well as emotional harms.  He alleges that he and TCS have "invested substantial time and money" in his visa application, and he cannot work for TCS while in India.  Compl. ¶¶ 119–120.  And Sharma alleges that he has been separated from his wife and two children since he first traveled to India for a visa interview in January 2025—over 18 months at this point.  *Id.* ¶ 118.  In cases of family separation, courts have found factors three and five to weigh in a plaintiff's favor.  *See Ghadami*, 2020 WL 1308376, at *9; *Janay v. Blinken*, 743 F. Supp. 3d 96, 117 ("[T]he interest in re-uniting families weighs in favor of avoiding undue delay."); *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 12 (finding the same).  Defendants' only argument in response is that "advancing the application would simply benefit Sharma to the detriment of other noncitizens, who may have experienced the same or worse impacts from a delay." ECF No. 18 at 21.  This is a point better considered at *TRAC* factor four.  Thus, the Court finds that factors three and five favor Sharma.

### 3.      *TRAC* Factor 4

Factor four heavily favors Defendants.  The fourth *TRAC* factor examines the effect of expedition on an agency's competing priorities.  *TRAC*, 750 F.2d at 80.  It often "carries the greatest weight."  *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020).  Courts "are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move petitioner to 'the head of the queue' and 'simply move[] all others back once space.'"  *Lee v.*

13

*Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *6 (D.D.C. Feb. 15, 2024) (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991)).  In other words, granting expedited agency action is inappropriate when that relief "would necessarily come 'at the expense of other similarly situated applicants'" with "'no net gain'" in adjudications achieved.  *Da Costa*, 80 F.4th at 343–44 (cleaned up).  That is exactly would happen here if Sharma receives his requested relief.  Ordering consular officials to process his application on his preferred timeline would "necessarily require [the agency] to prioritize [his] application[] 'at the expense of other similarly situated applicants.'"  *Rashidi v. Dep't of State*, No. 23-cv-1569 (JEB), 2023 WL 6460030, at *5 (D.D.C. Oct. 4, 2023) (quoting *Da Costa*, 80 F.4th at 344).  And this "would erode the ability of agencies to determine their priorities."  *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021).

Sharma argues that factor four is neutral in his case because "Defendants already pulled [him] out of the queue of other H-1B visa applicants subjecting him to the same treatment that was reserved for F, M, and J visa applicants."  ECF No. 20 at 17.  Sharma points to the State Department's request for his social media accounts—allegedly, before it publicly announced it would conduct social media screenings for H1-B visa applicants (and while such screening was applied for other categories of visa applicants).  *See id.*  Therefore, he argues, because his application is receiving special treatment, providing him his requested relief would not "reorder" the queue.  *Id.*  But the agency's request for Sharma's social media accounts when that was typically not part of the screening process for H1-B visa applicants does not support the inference that moving him to the front of the line would have no impact on the processing of other H1-B visa applications or, more generally, other nonimmigrant visa applications.  Because Sharma does not plausibly allege facts showing that relief would not come at the expense of similarly situated applicants, this factor still favors Defendants.

14

        **4.**     *TRAC* **Factor 6**

The final *TRAC* factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80.  In this case, Sharma agrees that "there is no indication that Defendants are acting in bad faith." ECF No. 18 at 22.  Thus, this factor is neutral.

*   *   *

The Court takes notice of the "troubling backlog of petitions waiting for . . . adjudication." *Da Costa*, 80 F.4th at 344.  But after weighing all the TRAC factors, the Court has little difficulty concluding that Sharma has not stated a claim for unreasonable delay of adjudication of his visa application that would entitle him to mandamus relief or state a claim under the APA.  In fact—unfortunately—his wait time "pales in comparison to the longer delays other applicants have unsuccessfully challenged in this district." *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 169 (D.D.C. 2021).  In the end, delays "stemming from resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities." *Milligan*, 502 F. Supp. 3d at 319 (cleaned up).  And although the Court sympathizes with Sharma and his prolonged separation from his family, this factor alone is not a reason for the Court to bump him to the front of the line.

**IV.**    **Conclusion**

For all the above reasons, the Court will grant Defendants' motion and dismiss the case.  A separate order will issue.

/s/ Timothy J. Kelly        
TIMOTHY J. KELLY
United States District Judge

Date: July 10, 2026